**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

Filtration Solutions Worldwide, Inc.　　　　　)
　　　　　　Plaintiff/Counter-Defendant,　　)
vs.　　　　　　　　　　　　　　　　　　)No.　08-0102-CV-W-FJG
Gulf Coast Filters, Inc.,　　　　　　　　　)
　　　　　　Defendant/Counter-Claimant　　)
vs.　　　　　　　　　　　　　　　　　　)
Randy Fields D/B/A Filtration Solutions　　　)
and/or d/b/a Filtration Solutions Worldwide,　)
　　　　　　Additional Counter-Defendant.　)

**ORDER**

Pending before the Court are (1) Plaintiff's Challenge to Defendant's Designated Expert Kenny Jones (Doc. No. 115); (2) Plaintiff's Challenge to Defendant's Designated Expert Marina Radoumis (Doc. No. 116); (3) Plaintiff's Daubert Motion to Exclude Opinions of Defendant's Designated Expert Marina Radoumis (Doc. No. 118); (4) Plaintiff's Daubert Motion to Exclude Opinions of Defendant's Designated Expert Kenny Jones (Doc. No. 119); (5) Defendant's Motion for Summary Judgment (Doc. No. 126); (6) Counter-Defendants' Motion for Summary Judgment (Doc. No. 141); and (7) Counter-Defendants' Motion to Strike Portions of the Affidavit of Jerry Sims and Suggestions in Support (Doc. No. 169). Each will be considered below.

**I.　Background**

Plaintiff Filtration Solutions Worldwide, Inc. and Defendant Gulf Coast Filters, Inc. are competitor businesses that both engage in the manufacture and sale of oil by-pass filters that are marketed to the trucking industry as products designed to extend the service life of oil used in the diesel engines of over-the-road tractors (class 8 trucks).  In 2004, Gulf Coast Filters began a national advertising campaign for its filters targeting the class 8 truck market, purchasing advertising spots on XM Satellite Radio and in Land Line Magazine. Plaintiff has made a false advertising claim as to two of defendant's advertising messages: (1) that the Gulf Coast Filters Model 0-2 by-pass filter can filter particles as small as one micron; and (2) that the Gulf Coast Filters Model 0-2 by-pass filter holds 2.5 gallons of oil. Plaintiff alleges that this allegedly false advertising violates the Lanham Act, 15 U.S.C. §

1125 et seq. (Count I), and constitutes a breach of a valid and reasonable business expectancy (Count II).  See Doc. No. 29, Amended Complaint.

Defendant, in return, has alleged that plaintiff has also engaged in false advertising (1) as to the efficiency of the FS-2500 by-pass filter versus the efficiency of Gulf Coast's GCF Model 0-2 Filter; (2) about "one-pass" efficiency rather than "capacity" of the respective filters; (3) that Filtration falsely stated that the GCF Model 0-2 holds four gallons of oil; (4) that Filtration falsely represented the price of the GCF Model 0-2 and the price of the FS-2500; and (5) that Filtration falsely advertised that Gulf Coast does not sell the GCF Model 0-2 with a filter element included.  Defendant has brought counterclaims against plaintiff and Randy Fields for: Count I, violations of the Lanham Act; Count II, Copyright Infringement; and Count III, Interference with Business Relations (Prospective Advantage).

## II. Plaintiff's Challenge to Defendant's Designated Expert Kenny Jones (Doc. No. 115) and Plaintiff's Daubert Motion to Exclude Opinions of Defendant's Designated Expert Kenny Jones (Doc. No. 119)[1]

Plaintiff moves to exclude the testimony of Kenny Jones, who is a certified and experienced mechanic, because (1) Jones is not qualified to testify as an expert on the issues in his affidavit; (2) Jones lacks foundation for his opinions; and (3) his opinions are unreliable because those opinions are based on selective anecdotal evidence rather than scientific studies.  Plaintiff states that Jones should not be allowed to testify as an expert, or at the very least his improper opinions should be stricken.  In its opening briefs, plaintiff challenges Jones' opinions found in paragraphs 13, 14, 16, 17, 18, 19, 20, 21, and 22 of his report.

### A. Legal Standard

Rule 702 of the Federal Rules of Evidence provides:

---

[1]As the issues raised in both the challenge and the Daubert motion are very similar, the Court will consider both motions together.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proponent of expert evidence must show by a preponderance of the evidence that the expert is qualified to render his opinion and the methodology underlying his conclusions is valid. Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 857-58 (8th Cir. 2006). Under Daubert all expert testimony must be "[n]ot only relevant, but reliable." See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). Furthermore, "[w]here opinion evidence . . . is connected to existing data only by the ipse dixit of the expert, a district court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Pro Serv. Auto., L.L.C. v. Lenan Corp., 469 F.3d 1210, 1216 (8th Cir. 2006).

B.    Analysis

1.    Paragraphs 13, 21(a) and 22(b)

Plaintiff states that the opinions in these paragraphs should be stricken because they involve lay testimony rather than expert opinion. Paragraph 13 involves the liquid volume capacity of the GCF 0-2 filter; Paragraph 21(a) involves the price of the FS-2500 and GCF 0-2 filters; and Paragraph 22(b) involves a statement that GCF sells the Model 0-2 with a filter element included. Plaintiff states that while it does not challenge the substance of these statements at this time (while reserving the right to present conflicting evidence at trial), there is nothing scientific or specialized about these statements that requires expert testimony.

In response, defendant states that the technical opinion of Kenny Jones in paragraph 13 is helpful to the trier of fact to understand why the advertising message of counter-defendants that the GCF Model 0-2 filter holds four gallons of oil is literally false.

Defendants state that in paragraph 13, Kenny Jones provides a helpful technical explanation that although the capacity of the GCF Model 0-2 by-pass filter is 2.5 gallons, sometimes more than 2.5 gallons of oil must be added to the system at element change intervals to account for oil lost to engine oil consumption.

In reply, plaintiff notes that defendant does not dispute that the opinions in paragraphs 21(a) and 22(b) are more properly the subject of lay testimony. Plaintiff also reasserts that the "opinion" in paragraph 13 regarding liquid volume capacity is more properly the subject of lay testimony.

After reviewing the parties' arguments, the Court finds that paragraph 13 of Mr. Jones' report should not be stricken, as the information contained therein is not necessarily information that is within a lay-person's knowledge. However, paragraphs 21(a) and 22(b) are more properly the subject of lay testimony, and shall be stricken.

        2.       Paragraphs 14, 16, 17, 18, 19, 20, 21, and 22–Lack of Qualifications and Lack of Reliability under <u>Daubert</u>

Plaintiff states that Mr. Jones is not qualified to testify on the subjects of these paragraphs, given his experience as an ASE Master Mechanic, certified by CAT, Detroit Diesel, Cummins, and other manufacturers to maintain their Class 8 trucks, and his 25 years as a diesel mechanic.

With respect to paragraphs 14, 16, 20, 21, and 22, Mr. Jones opines that certain of plaintiff's advertisements are "deceptive or would have a tendency to deceive substantial portions of the owner-operator market for by-pass oil filters."[2] Plaintiff indicates that these opinions are apparently based on Mr. Jones' interactions with owner-operators, but that Mr. Jones has not indicated that he has taken a scientific survey regarding owner-operators'

---

[2]This statement apparently relates to the second element of a Lanham Act false advertising claim, that a commercial advertisement actually deceived or has the tendency to deceive a substantial segment of its audience. <u>See</u> <u>American Italian Pasta Co. v. New World Pasta Co.</u>, 371 F.3d 387, 390 (8th Cir. 2004) (setting out the elements of a false advertising claim under the Lanham Act).

reactions to the advertisements, or what factors influence their purchasing decisions.[3] Plaintiff further indicates that Mr. Jones has made no attempt to link his training and experience with his conclusions that these advertisements are deceptive or have a tendency to deceive. See Morris v. Hockemeier, No. 05-0362-CV-W-FJG, 2007 U.S. Dist. LEXIS 43964, at *7 (W.D. Mo. June 18, 2007). Additionally, anecdotal evidence derived from interactions with customers is not a reliable basis for such opinions. See Playtex Prods., Inc. v. Proctor & Gamble Co., No. 02-CV-8046, 2003 U.S. Dist LEXIS 8913, at *27-30 (S.D. N.Y. 2003). Plaintiff additionally suggests that these opinions should be stricken under Daubert, as there is no scientific basis or other reliable methodology for these opinions at all. Defendant responds that Mr. Jones' years of experience qualify him to make these statements; however, this Court agrees that years of experience as a mechanic does not demonstrate that Mr. Jones has any expertise regarding advertisements or what drives consumers' purchasing decisions. Plaintiff's motions are granted, and these paragraphs will be **STRICKEN**.

With respect to paragraphs 17-20, which involve a discussion of both the IBR and Spectro-Scan test reports, plaintiff indicates that Mr. Jones is without the training, experience, and background to give his opinions. Plaintiff notes that Mr. Jones' background is as a mechanic, and his affidavit gives no indication that he has the background or experience to comment on by-pass oil-filter testing. Further, in paragraphs 18 and 20, Mr. Jones interprets the Spectro-Scan test, and plaintiff states that as Jones did not conduct the test, he should not be allowed to testify as to the reliability of the methods employed. After reviewing the arguments of both parties as to this issue, the Court agrees with plaintiff, and grants plaintiff's motion to strike as to these paragraphs. Paragraphs 17-20 will be **STRICKEN** due to Mr. Jones' lack of qualifications and lack of reliability.

---

[3]Plaintiff notes that this element (proof of a public reaction to an advertisement) usually turns on the results of a consumer survey, not on a supposed expert's say-so. See United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1182-83 (8th Cir. 1998).

### 3. Paragraphs 14, 16, 19, 20, 21, and 22–Lack of Foundation

Plaintiff indicates that the opinions in these paragraphs, that plaintiff's advertising messages are "likely to influence customers' purchasing decisions," appear to be based on Mr. Jones' personal interactions with customers. Such anecdotal evidence is a sign of unreliability under <u>Daubert</u>. <u>See</u> <u>Bradley v. Brown</u>, 42 F.3d 434, 438-39 (7th Cir. 1994); <u>Playtex Products</u>, 2003 U.S. Dist. LEXIS 8913, at *27-30. Further, plaintiff indicates that Jones lacks foundation for his opinions in paragraph 19 regarding efficiency versus capacity. First, plaintiff indicates that Jones misidentifies the test that IBR ran as being only a one-pass efficiency test. Second, plaintiff notes that Jones does not indicate what "real world oil sample test results" he is referring to, and the only real world results attached to his affidavit are for the GCF Model 0-2, not for the FS-2500. Further, plaintiff notes that Jones does not indicate that those results represent a statistically significant number of tests done, or how Jones selected the test results included. Finally, plaintiff notes that Jones fails to explain how the results of two separate tests demonstrate that filter capacity is more important than efficiency.

After considering the arguments made by both parties, plaintiff's motion to strike as to these paragraphs shall be **GRANTED**. The Court finds that the opinions in these paragraphs should be stricken for lack of foundation, as discussed by plaintiff.

### 4. Paragraph 20–Irrelevance and Lack of Foundation

Plaintiff indicates that the opinion regarding particle size in paragraph 20 is irrelevant and lacks foundation. In that paragraph, Jones states: "[Filtration Solutions'] advertising message that it is only important to filter particles in the 2 to 22 micron range is deceptive." However, plaintiff states that its message was not that "it is only important" to filter such particles, but rather than customers should want a by-pass filter that removes as many particles in that range as possible. <u>See</u> Doc. No. 63, Ex. 4 to Jones Aff. Thus, plaintiff states that Jones' opinion is irrelevant. Further, Jones does not explain the source of the fact that "filtration down to 1 micron is essential," nor does he explain the connection

between "fuel soot particles conglomerat[ing] and break[ing] apart" and the need to remove particles below 2 micron.  Thus, plaintiff states that the opinion lacks foundation.  In its response, defendant asserts that Mr. Jones' review of the relevant literature makes him qualified as to the effects of various size contaminant particles on engine wear.  Plaintiff replies, with respect to the opinion in paragraph 20 regarding particle size and engine wear, defendant's response does not identify what "literature" may possibly support this "opinion" or whether such "literature" is relevant.

After considering the parties' positions, the Court finds that Jones' opinions in paragraph 20 of his report (which have already been stricken, see above), should be stricken on this basis as well.  Plaintiff's motion to strike as to this issue will be **GRANTED.**

5.      Paragraphs 4-12

Finally, defendant asserts that Mr. Jones' opinions in paragraphs 4 through 12 are admissible.  (These "opinions" were not included specifically in plaintiff's original motion to strike, although plaintiff urged the Court in the original motion to strike the entire expert report of Mr. Jones.)

Plaintiff replies that, within these paragraphs, defendant makes vague assertions regarding the messages in Filtration Solutions' advertisements, often interpreting these advertisements to say things they do not actually say.

After considering the parties' positions, the Court finds that the opinions in paragraphs 4-12 should not be stricken at this time, as plaintiff failed to specifically move to strike these in its opening brief (and, typically, the Court does not consider arguments made for the first time in the reply brief, when the other side has no opportunity to oppose).  Therefore, plaintiff's motion to strike these opinions will be **DENIED WITHOUT PREJUDICE** to plaintiff re-asserting its objections at trial.

**III.    Plaintiff's Challenge to Defendant's Designated Expert Marina Radoumis (Doc. No. 116) and Plaintiff's <u>Daubert</u> Motion to Exclude Opinions of Defendant's**

**Designated Expert Marina Radoumis (Doc. No. 118)[4]**

Plaintiff challenges certain opinions of designated expert Marina Radoumis as they are (1) irrelevant, (2) unhelpful to the factfinder, (3) lack foundation, and (4) are unreliable under Daubert. Maria Radoumis is a laboratory technician with over 40 years of experience in the field of oil analysis. She has analyzed thousands of oil samples from diesel engines including the class 8 trucks used in the interstate trucking business. Defendant indicates that for the past 20 years, Radoumis has analyzed thousands of oil samples taken from the engines of class 8 trucks equipped with the GCF0-2 by-pass oil filter. Plaintiff challenges Radoumis' opinions in paragraphs 9, 10(a), 10(b), 10(c), 10(d), 11, 12, 14, and 15 of her report.

1.     Paragraphs 9, 10(a)-(d) and 11

Plaintiff alleges these must be excluded because they are irrelevant, lack foundation, and would not be helpful to the jury. Radoumis does not specify any alleged misrepresentations at which these paragraphs are aimed or Gulf Coast claims which they support; instead, plaintiff states that the ability to maintain purity of engine oil appears to be self serving puffery and is irrelevant. Further, plaintiff states these are not helpful to the fact-finder as they do not relate to any of the facts at issue in this case. Finally, plaintiff notes that other than Radoumis' reference to industry standards with regard to soot levels in paragraph 10(b), Radoumis does not explain what the industry standards are that the GCF 0-2 meets or exceeds. Further, in paragraph 11 she claims to have compared GCF 0-2 oil sample reports with those from engines equipped with different oil filtration systems, but she attaches only 23 reports from GCF 0-2 filters and none from other engines equipped with "comparable filtration systems." She further does not explain her rationale for picking the 23 reports attached to her expert affidavit.

---

[4]Again, as the issues raised in both the challenge and the Daubert motion are very similar, the Court will consider both motions together.

Defendant responds that the opinions in paragraph 9, 10, and 11 are relevant, as these opinions show that plaintiff/counterdefendants' advertising emphasizing one-pass efficiency and/or multi-pass efficiency rather than contaminant holding capacity of the respective filter systems is false and/or misleading advertising that misrepresents the nature of the FS-2500 and the GCF Model 0-2 by-pass filtration systems. Defendant states that plaintiff/counterdefendant has published advertising messages that claim the FS-2500 is superior to the GCF Model 0-2 based on one-pass efficiency and/or multi-pass efficiency rather than contaminant holding capacity of the respective filter systems. Defendant states that Radoumis' opinions herein show that the GCF Model 0-2 allows trucks to operate for hundreds of thousands of miles between oil changes with minimal engine wear, and that these conclusions are helpful to the finder of fact in showing that the GCF 0-2 is very effective in extending engine oil life, demonstrating the deceptive nature of counter-defendants' advertising message. Further, defendant states that Radoumis' opinions are based on her years of work analyzing thousands of oil samples from diesel engines using both the GCF 0-2 and other systems (not just the 23 reports attached to her affidavit). Defendant, however, does not provide any information as to what other oil filtration systems Radoumis has analyzed, or why she selected the 23 reports attached to her expert affidavit.

Finally, with respect to <u>Daubert</u> issues, plaintiff states that these opinions should be excluded as unreliable. As to paragraph 9, Radoumis opines that engines using the GCF 0-2 "routinely" log hundreds of thousands of miles between oil changes; however, plaintiff states that Radoumis does not explain what she means by "routinely," and notes that Radoumis has only attached 23 oil sample reports in support of her opinions (and plaintiff indicates that Radoumis' employer has allegedly analyzed thousands of GCF oil samples, making 23 reports not a statistically significant number to establish whether something is routine). With respect to the opinions in paragraph 10, plaintiff again notes that the reports attached to Radoumis' affidavit only show the experience of 23 engines, which is not

enough to reliably establish the experience of all engines in over-the-road tractors equipped with the GCF 0-2. Finally, with respect to paragraph 11, Radoumis states that she has "compared oil samples from comparable engines equipped with the GCF 0-2 and not equipped with the GCF 0-2" which allegedly verify that wear rates in the former groups are much lower than in the latter group; however, Radoumis does not identify what filter systems the latter group was fitted with, nor does she attach any oil sample reports from that group, nor does she describe what engine wear test she applied or what methodology she used to make these comparisons.

Defendant responds regarding the <u>Daubert</u> issue that the opinions found in paragraphs 9, 10, and 11 meet the indicia of reliability called for by FRE 702 and applicable case law. Defendant states that Radoumis is well-qualified from her years of experience and training to offer her opinions in the fields of oil filtration, and that plaintiff does not challenge her qualifications. Defendant also asserts that because the data relied upon by Radoumis was prepared in the normal course of her business activities rather than in preparation for this litigation, her opinions are even more reliable. Defendant states that since her opinions are based on "reliable data garnered from routine business operations, the court would fulfill its gate keeping duties by allowing introduction of these opinions." Defendant makes no mention or explanation of the comparisons made with other, unknown filters, or how the 23 reports attached to the affidavit have any more significance than the other "thousands" of reports she has prepared over her career.

After considering the parties' arguments, the Court finds that plaintiff's motion to strike and <u>Daubert</u> motion as to paragraph 9, 10(a)-(d) and 11 have merit, and should be **GRANTED.** Paragraphs 9, 10(a)-(d) and 11 of Radoumis' report will be **STRICKEN**.

> 2. Paragraph 12

Plaintiff indicates that Radoumis has provided no foundation for her statement that the GCF 0-2 "remov[es] microscopic fuel soot particles down to 1 micron or below." She does not cite to any testing or other evidence that the GCF 0-2 filters down to 1 micron, and

the results of the tests attached to her report (Ex. D) do not confirm this, either.

Defendant responds that the opinion that it is important to filter out the smallest contaminant particles (down to one micron) is relevant to issues presented in this case and is supported by test data of record in this action. Defendant states that Radoumis bases her opinion that the GCF 0-2 can filter fuel soot particles down to 1 micron on her review of laboratory tests confirming these claims (defendant cites to the Bonavista Laboratory Test results attached as Ex. 2 to Affidavit of Jim Fitch, Doc. No. 76–however, Ms. Radoumis does not cite to specific test results in her affidavit, and she does not indicate in paragraph 12 of her affidavit that she based her opinion on any review of lab tests.)

Plaintiff replies that defendant cites to the affidavit of Jim Fitch, and only that affidavit, as the foundation for Radoumis' opinion that the GCF 0-2 "remov[es] microscopic fuel soot particles down to 1 micron or below." Plaintiff notes that Fitch's report was not attached to Radoumis' affidavit or cited by her. Plaintiff states that any retroactive attempt to establish foundation "speaks for itself as unreliable."

After considering the arguments of both parties, the Court finds that plaintiff's motion to strike as to this paragraph should be **GRANTED.** Paragraph 12 of Ms. Radoumis' report shall be stricken.

### 3. Paragraphs 14 & 15

In these paragraphs, Radoumis discusses the effect of adding 2.5 gallons of make-up oil to the GCF 0-2 during element changes. Plaintiff indicates that although the parties have competing false advertising claims based on whether the GCF 0-2 holds 4 gallons or 2.5 gallons, this issue is not a proper subject of expert testimony. Instead, the issue is the volumetric capacity of the filter. Plaintiff states that these opinions should be excluded as irrelevant and unhelpful to the trier of fact.

Defendant responds with respect to paragraph 14 that one of counter-defendants' false advertising messages is that the GCF 0-2 is only able to extend oil change intervals because of the volume of oil that is added to the system when the elements are changed

each 10,000 miles.[5]  Defendant states that by "citing the oil analysis reports that show that the class 8 trucks equipped with the GCF Model 0-2 by-pass filtration system are able to operate for hundreds of thousands of miles while keeping soot levels within industry standards, Marina Radoumis has laid the foundation for her opinion that addition of oil during element changes would not prevent increasing fuel soot levels if the GCF Model 0-2 by-pass filtration system were not constantly removing fuel soot from the engine oil." Further, with respect to paragraph 15, defendant states that this information is helpful to the trier of fact to understand why class 8 trucks equipped with the GCF 0-2 are able to keep additive levels within industry standards for hundreds of thousands of miles. Defendant states that counter-defendants publish a false and/or misleading advertising message that it is dangerous to use the GCF 0-2 for hundreds of thousands of miles.[6] Defendant states that Radoumis helps debunk this assertion by showing that the addition of make-up oil at element change intervals keeps the GCF 0-2 operating within industry standards for hundreds of thousands of miles.

Plaintiff replies that defendant fails to identify a Filtration advertisement that contains the messages that Radoumis' opinions supposedly contradict in paragraphs 14 and 15 of her report, making these opinions irrelevant to the claims or defense of any party in this case (and, with respect to the allegation that Filtration has represented the GCF 0-2 as "dangerous," highly prejudicial because of its lack of foundation).

After considering the parties' arguments, the Court finds that plaintiff's motion should be **PROVISIONALLY DENIED** as to this issue.  However, defendant must provide the advertisement that forms the basis for Ms. Radoumis' testimony in paragraphs 14 and 15 of her affidavit in advance of trial.  Defendant **SHALL** file a response to this Order,

---

[5]Defendant does not cite to where this advertising message appears in the record.

[6]Again, defendant does not cite to where this advertising message appears in the record.

12

attaching such advertisement(s), on ECF on or before **JANUARY 25, 2010**.

IV.     **Defendant's Motion for Summary Judgment (Doc. No. 126)**

Defendant argues that plaintiff's claims should be dismissed with prejudice since plaintiff has not presented any material facts that would sustain either of its claims.

A.     Facts

Gulf Coast Filters, Inc. (GCF) is a Mississippi business corporation formed on November 25, 1981.  Filtration Solutions Worldwide, Inc. (FS) is a Kansas domestic for profit corporation formed on August 7, 2006.  Counter-Defendant Randy Fields is an individual resident of Kansas who admits that he operated Filtration Solutions as a sole proprietorship prior to formation of the FS entity on August 7, 2006.

GCF sells an oil by-pass filter called the "GCF 0-2".  Randy Fields and FS sell an oil by-pass filter called the "FS-2500".  GCF, Randy Fields, and FS market their by-pass filter products to the trucking industry as products designed to extend the service life of oil used in the diesel engines of over-the-road tractors (class 8 trucks).  However, plaintiff notes that Randy Fields marketed and sold the FS-2500 only as d/b/a Filtration Solutions and only until Filtrations Solutions was incorporated on August 7, 2006.  From that date forward, only Filtration Solutions Worldwide, Inc. sold and marketed the FS-2500.

In 2004,GCF began a national advertising campaign for its filters targeting the class 8 truck market.  In this campaign, GCF purchased advertising spots on XM Satellite Radio and in Land Line Magazine.  FS bases its false advertising claim on two of GCF's advertising messages: (1) that the GCF Model 0-2 by-pass filter can filter particles as small as one micron; and (2) that the GCF Model 0-2 by-pass filter holds 2.5 gallons of oil.

GCF asserts that the GCF Model 0-2 by-pass filter can filter particles smaller than one micron, and after two hours of filtration, the GCF Model 0-2 by-pass filter is shown to remove over 99% of submicron particles.  Plaintiff, however, disputes this fact (see plaintiff's facts, below). GCF further asserts that the GCF Model 0-2 Filter canister is a

cylinder measuring 6" in diameter and 25" in length.  Without the displacement of internal components, this canister would have a calculated volume of 3.05998 gallons.  Plaintiff, however, disputes this fact (see plaintiff's facts, below).  GCF asserts that, subtracting the displacement of the internal parts of the GCF Model 0-2, which include a 3/4" center pipe and two elements with GP plates, the GCF Model 0-2 by-pass filter holds approximately 2.5 gallons of oil.  Plaintiff, however, disputes this fact (see plaintiff's facts, below).

FS has no evidence to support its allegations in paragraph 14 of its Amended Complaint that GCF's alleged "false and/or misleading descriptions of fact and/or statements of fact actually deceived, or had a tendency to deceive, and continue to deceive or have a tendency to deceive, a substantial segment of the owners and operators of the over-the-road tractors audience."   FS has no evidence to support its allegations in paragraph 15 of its Amended Complaint that GCF's alleged "false advertising is materially deceptive, in that it is likely to, and continues to be likely to, influence consumers' purchasing decisions."  FS has no evidence to support its allegations in paragraph 17 of its Amended Complaint that as a direct and proximate result of GCF's alleged false advertising, FS "has been damaged and continues to be damaged in the following ways: lost sales (both diversion to defendant and indirect diversion to others), loss of good will associated with its products, diminution in its market share, increased costs in countering the false advertisements, and damage to its business reputation."  FS has no evidence to support its allegations in paragraph 21 of its Amended Complaint that the alleged false statements and acts and omissions of GCF "were, and on information and belief, continue to be intentional and willful and calculated to cause damage to Filtration Solutions and its lawful business by breaching a valid and reasonable business expectancy of Filtration Solutions in which defendant has knowledge."   GCF did not engage in comparison advertising with respect to the advertising messages at issue in this case.

Plaintiff's statement of additional uncontroverted facts:

GCF has advertised that the GCF Model 0-2 can remove particles below 1 micron

in various issues of Landline Magazine. GCF has also advertised that the GCF Model 0-2 has a 2.5-gallon capacity in various issues of Landline Magazine.

GCF has made the 1-micron claim for over twenty (20) years. GCF initially based this 1-micron claim on a test done by U.S. Testing Group in 1986. GCF admits that the test performed by U.S. Testing Group was done on the GCF Model 0-1, not the Model 0-2. The GCF Model 0-1 is a hydraulic filter. GCF's designated expert James Fitch admits "there is not a standardized test method for oil filters to determine the capture efficiency or dirt-holding capacity of filters in the range of 1 micron particles." He also admits that "[c]onventional automatic particle counters used in filter testing are incapable of sizing and counting dust below two microns (because of the wave length of light)." Fitch then relies on a non-standard test done by third-party Corpuscular, Inc. to support his 1-micron opinion. FS's designated expert Susan Goldsmith opined that "any test purporting to measure the ability of a filter to remove particles below 2 micron would not meet generally accepted testing standards in the oil-filter testing industry and/or would otherwise produce inaccurate results."

Goldsmith also stated that the "volume of oil contained in the Gulf Coast Model 0-2 housing with filter was 11.5 L, i.e., approximately 3.04 gallons." FS's Randy Fields purchased a GCF Model 0-2 and filled it with oil, finding the oil-capacity of the filter to be approximately 3 gallons. In a promotional flyer, GCF represented that three gallons of oil was needed during an oil change for the Model 0-2. In the instructions for the GCF Model 0-2, Gulf Coast instructed Model 0-2 users to add three gallons of make-up oil. Oil-sample reports distributed by GCF also indicate that more than 2.5 gallons are added during an oil change for an over-the-road tractor equipped with the GCF Model 0-2.

GCF's corporate representative Jerry Sims has not been designated by Gulf Coast as an expert in this case. FS is still seeking injunctive relief, but is no longer seeking monetary damages in connection with GCF's false advertising claims.

B.    Standard

15

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the disputes must be outcome determinative under prevailing law." Id. (citations omitted).

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

C.    Analysis

1.    Lanham Act Claim

GCF states that plaintiff's Lanham Act claim must be dismissed since FS has no

proof that GCF's advertising messages actually deceived or had the tendency to deceive a substantial segment of the target audience. Defendant states that to prevail on a false advertising claim under the Lanham Act, plaintiff must prove: (1) the defendant made a false statement of fact in commercial advertising or promotion about its own or another's goods, services or commercial activities; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, that is, likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement. See Interfood Holding, B.V. v. Rice, 607 F.Supp.2d 1059, 1062 (E.D. Mo. 2009), quoting American Italian Pasta Co. v. New World Pasta Co., 371 F.3d 387, 390 (8th Cir. 2004) and United Industries Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998). If a defendant is found to have violated the Lanham Act willfully and in bad faith, a plaintiff is not required to provide consumer surveys or reaction tests in order to prove entitlement to damages/proof of intent to deceive in a false comparative advertising action. See Porous Media Corp. v. Pall Corp., 110 F.3d 1329, 1337 (8th Cir. 1997). However, when there is no finding of a willful violation or an intent to deceive, evidence of consumer impact is essential (usually through consumer or market research), unless the commercial claim is literally false. United Industries Corp. v. Clorox Co., 140 F.3d 1175, 1183 (8th Cir. 1998).

Defendant states that plaintiff's Lanham Act claim rests on two of defendant's advertising messages: (1) that the GCF Model 0-2 by-pass filter can filter particles as small as one micron; and (2) that the GCF Model 0-2 by-pass filter holds 2.5 gallons of oil. Defendant states that plaintiff has no proof that these statements are literally false or that they were made with a willful intent to deceive. Defendant states that it has submitted "unchallenged scientific proof that the GCF Model 0-2 by-pass filter can filter particles smaller than one micron" and that FS's corporate representative admitted at deposition that it has no evidence to show that the GCF Model 0-2 cannot filter particles below one micron.

Further, defendant states that it has "scientific proof" that the GCF Model 0-2 by-pass filter holds 2.5 gallons of oil, and that FS's expert report showing that the GCF Model 0-2 by-pass filter holds more oil than that is based on a flawed conclusion (arguing, without support in the record, that plaintiff's expert must have come up with the 3.09 gallon volume figure by using the formula for calculating the volume of a hollow cylinder and not adjusting for the displacement of area by internal parts). Defendant further states that since FS has no proof that GCF's advertising messages are literally false, and has no evidence in the form of reliable consumer or market research that these advertisements actually deceived or had the tendency to deceive their target audience, plaintiff's Lanham Act claims must be dismissed.

Plaintiff responds that when the evidence is viewed in the light most favorable to plaintiff, there are genuine issues of material fact with respect to whether defendant falsely advertised that the GCF Model 0-2 removes particles below 1 micron and that the GCF Model 0-2 holds 2.5 gallons. With respect to the 1 micron claim, plaintiff notes that for over twenty years, defendant relied on the testing of a different oil filter (the GCF Model 0-1) to support its claim that the GCF Model 0-2 filters particles below 1 micron. Plaintiff also states that defendant's purported expert, James Fitch, relied on a non-standard test to determine that the GCF Model 0-2 removed particles below 1 micron. Finally, plaintiff notes that its own expert will testify that tests purporting to measure the ability to remove particles below 2 micron would not meet generally accepted testing standards in the oil-filter testing industry. Plaintiff states this conflicting evidence leads to the conclusion that whether the 1-micron claim is literally false is a question for the jury. Defendant replies that plaintiff has no affirmative evidence that the GCF Model 0-2 cannot remove particles smaller than 1 micron, and that plaintiff cannot avoid its burden of proof by attacking defendant's evidence. The Court finds, however, if (as asserted by plaintiff) there is no reliable way to test for the ability to remove particles below 2 micron, then questions of material fact remain for trial as to whether this claim made in GCF's advertisements is literally false.

With respect to the 2.5 gallon capacity claim, plaintiff notes that (1) its own expert found that the volume of the GCF Model 0-2 housing with filter was over 3 gallons (and that defendant's challenges to plaintiff's expert's conclusions are a late attempt to strike the expert after defendant missed the deadline for filing a <u>Daubert</u> motion); and (2) previous documents produced by GCF itself indicate that 3 gallons of make-up oil were needed at component changes. Defendant replies that its statement regarding oil capacity is true, and can be objectively measured. Defendant further states that it has served a request for admission on plaintiff to clarify the capacity of the GCF Model 0-2, and that it requests the Court defer ruling on this claim and that defendant be later allowed to supplement the record with plaintiff's response. The Court notes, however, that defendant's request for admission comes far too late, as discovery in this matter closed on August 31, 2009. Further, at this stage in the litigation, the Court has no reason to find one side's statements as to capacity to be any more believable than the other side's. Questions of material fact remain as to the capacity of the oil filter, and summary judgment cannot be granted on this basis.

Defendant also indicates, assuming arguendo that the GCF Model 0-2 holds three gallons of oil, that difference in capacity is not material, and that, as plaintiff has no proof of literal falsity, its Lanham Act claims must fail. However, the Court finds that questions of material fact remain as to whether the capacity claims made by GCF are literally false. Further, defendant states that plaintiff has no proof of materiality (i.e., no competent evidence that consumers relied on the advertising message at issue when making purchasing decisions), and that plaintiff has no proof that it has suffered money damages. Plaintiff notes that evidence of deception to customers is irrelevant, as plaintiff has set forth evidence that defendant's representations are literally false. Further, plaintiff states that as it is only seeking <u>injunctive relief</u>, whether consumers relied on the advertising message at issue is also irrelevant. <u>See</u> <u>McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.</u>, 938 F.2d 1544, 1548-49 (2d Cir. 1991).

Based on the representations made in plaintiff's response, the Court finds that plaintiff's claims for monetary damages under the Lanham Act should be **DISMISSED**. Defendant's motion for summary judgment as to the Lanham Act claim, therefore, will be **DENIED** in part as it relates to claims for injunctive relief, and **GRANTED** in part as it relates to claims for monetary damages.

2. Tortious Interference with Business Expectancy

Defendant states that plaintiff has not demonstrated that it has any evidence to support its claim for tortious interference with business expectancy (in particular, noting that plaintiff has no proof that defendant acted intentionally and has no proof of damages). In its response brief, plaintiff does not address defendant's arguments as to this claim. Accordingly, the Court will **GRANT** defendant's motion for summary judgment as to plaintiff's claims for tortious interference with business expectancy.

**V. Counter-Defendants' Motion for Summary Judgment (Doc. No. 141) and Counter-Defendants' Motion to Strike Portions of the Affidavit of Jerry Sims and Suggestions in Support (Doc. No. 169)[7]**

---

[7]Counter-defendants note in their reply suggestions that GCF's responses to counter-defendants' facts, as well as their own genuine issues of material fact, are "highly editorialized, often unsupported, and argumentative rather than based on facts that are supported by specific references to the record." Specifically, they note that GCF mainly relies on an affidavit of its corporate representative, Jerry Sims, and suggest that most of the affidavit of Mr. Sims should be stricken as not being founded upon personal knowledge, as containing hearsay, speculation, legal conclusions, and as being contradictory to Sims' own testimony. Counter-defendants have more specifically addressed these claims in their motion to strike portions of the affidavit (Doc. No. 169). Counter-defendants further note that GCF has not complied with Local Rule 56.1(a), which requires that "each fact in dispute shall be set forth in a separate paragraph, shall refer specifically to those portions of the record upon which the opposing party relies, and, if applicable, shall state the paragraph number in movant's listing of facts that is disputed. . . . Affidavits or declarations shall be made on personal knowledge and by a person competent to testify to the facts stated."

After considering the motion to strike, as well as counter-defendant's objections to Sims' affidavit in their reply suggestions to their motion for summary judgment, the Court will consider the objections of plaintiff/counter-defendant in preparing its statement of facts, and otherwise will **DENY** the motion to strike (Doc. No. 169) as **MOOT.**

A.    Facts

In 1996, Counter-defendant Randy Fields ("Fields") began selling an oil by-pass filter system known as the FS-2500.  Fields operated as a sole proprietor until August 2006, when he incorporated his business in Kansas as Filtration Solutions Worldwide, Inc. ("Filtration Solutions").  The FS-2500 is advertised and sold for a variety of industries including agriculture, mining, transit, hydraulics, diesel pick-ups, power generation, irrigation, municipality, and Class 8 over-the-road tractors (the "Class 8 Market").

Defendant Gulf Coast Filters, Inc. ("Gulf Coast") is a Mississippi corporation that also sells a by-pass oil filter for the Class 8 Market. Gulf Coast's product that it sells to the Class 8 Market is commonly referred to as the "GCF Model 0-2" or "GCF 0-2." Fields estimates there are approximately 20 to 25 by-pass filters on the Class 8 Market. However, Gulf Coast disputes this assertion of fact.  Fields simply estimated that 20 to 25 by-pass oil filters are sold on "the market".  He did not testify that each of these 20 to 25 by-pass oil filters are sold to the "Class 8 Market".  In fact Fields estimated that no more than five companies are well known to the Class 8 Market.  See Ex. B to Doc. No. 164, Deposition of Randy Fields, pp. 75-76.

Gulf Coast testified there are "over a million" over-the-road tractors on the road.  An estimate by Mackay & Co. showed 2.75 million Class 8 trucks in use at the end of 2007 and 2.69 million Class 8 trucks in use at the end of 2008. Gulf Coast does not know its own market share or Filtration Solutions' market share of the by-pass oil filtration industry, Class 8 or otherwise. Gulf Coast has sold an average of 372 GCF Model 0-2 filter systems a year to the trucking industry since 2004.  Since 2004, Fields/Filtration Solutions has sold an average of 285 FS-2500 filter systems a year to the Class 8 Market.

**The "How Much Would You Save" Flyer**

_____

In 2006, Filtration Solutions distributed a flyer entitled "How Much Would You Save" to potential customers who contacted Filtration Solutions for more information. In 2006, Filtration Solutions asserts that if a potential Filtration Solutions customer asked about the Gulf Coast 0-2 filter specifically, then Fields would send a particular form letter (the "Gulf Coast Letter") with the "How Much Would You Save" flyer enclosed, among other promotional materials. However, GCF notes that counter-defendants have no records showing to whom they sent these letters. The Gulf Coast Letter included the following: "I have also attached a brief comparison fact sheet so you can see the differences between the FS-2500 and the Gulf Coast filter (in case you are interested)."

Gulf Coast claims that Filtration Solutions made the following literally false statements in the "How Much Would You Save" flyer, as well as in print ads, some of which were published in Land Line Magazine, or in XM Radio ads:

a. The GCF Model 0-2 holds four gallons of oil.

b. Gulf Coast does not sell the GCF Model 0-2 with a filter element included.

c. The GCF Model 0-2 weighs forty-nine pounds.

d. That the GCF Model 0-2 cost between $850.00 and $1,000.00 during the pertinent time period with a hose kit included.

e. That the FS-2500 cost "about $549.00."

Counter-defendants assert that Gulf Coast claims that the following statements on the "How Much Would You Save" flyer are misleading:

a. "[FS 2500] Kit comes with complete instructions with digital pictures for your specific truck and engines (not 'just give me a call when you're ready to install it and I'll try to talk you through it')."

b. "Kit comes with stainless steel hose standards, cut and crimped to length (you don't have to have a hose made or buy 35 feet of hose for $180 and cut it yourself.)" (Id. at 43:7-15.)

GCF disputes, however, that Filtration Solutions' advertising message on this point is

merely "misleading," and that there is a genuine issue of material fact as to whether these statements are literally false. Counter-defendants state that this testimony is inconsistent with Sims' deposition testimony; however, after reviewing the record in this case, the Court agrees with GCF that questions of material fact remain as to which statements are literally false versus misleading.

Gulf Coast also claims that the "burglar analogy" in the Gulf Coast Letter sent by Filtration Solutions is misleading because it emphasizes one pass efficiency and it implies that the GCF Model 0-2 does not lower engine wear. Gulf Coast disputes that Filtration Solutions' "burglar analogy" advertisement is merely "misleading," and that there is a genuine issue of material fact as to whether Filtration Solutions' advertising message is literally false. Again, the Court agrees with GCF that questions of material fact remain as to which statements are literally false versus misleading.

**The IBR Letter**

In March 2007, Filtration Solutions had the FS-2500 and the Gulf Coast Model 0-2, among others, tested by Interbasic Resources, Inc. ("IBR"). IBR provides, among other things, testing for by-pass oil filters. About one-third of IBR's testing is automotive oil-filter testing. Filtration Solutions asserts that IBR is accredited by the American Association for Laboratory Accreditation (A2LA) for compliance with ISO/IEC Guide 17025 for good laboratory practices, its instruments and test standards meet or exceed industry standards, including those established by the International Organization of Standardization (ISO), the Society of Automotive Engineers (SAE), Japanese International Standards (JIS), and the National Fire Protection Association (NFPA), and its instruments are calibrated to conform with the National Institute of Standards and Technology (NIST) standards. Filtration Solutions asserts that IBR conducted the same test – the ISO 16889 (1999) Multipass Filter Performance Test – on the FS-2500 and the Gulf Coast Model 0-2 filters under identical conditions (the "IBR Test"). GCF, however, disputes Filtration Solutions' assertions of fact as to the IBR testing since GCF's expert, Jim Fitch, has questioned the testing

methodology. Counter-defendants object to GCF's citation to the record, as GCF cites to the entire affidavit of Jim Fitch without making pin-point citations, and state that their facts should be deemed admitted; however, in reviewing the facts in the light most favorable to the party opposing summary judgment, the Court finds that this fact is properly disputed and that genuine issues of material fact remain as to the testing.

Gulf Coast claims that Filtration Solutions made false and misleading statements about the efficiency of the FS-2500 by using the IBR Test results on Filtrations Solutions' 360.5 and 361 elements in selling the FS-2500 362 element. Gulf Coast also claims Filtration Solutions used the IBR Test results to mislead consumers regarding the efficiency of the GCF Model 0-2.

**XM Radio Advertisements**

Gulf Coast claims that a Filtration Solutions radio advertisement that used to air on XM radio was misleading because it implied that Gulf Coast did not offer hose kits. Another Filtration Solutions radio advertisement that used to air on XM radio included a testimonial from an FS-2500 customer who referred to "other systems" that use four gallons. Gulf Coast claims this advertisement was misleading. A third Filtration Solutions radio advertisement that used to air on XM radio states that "even engine manufacturers agree that smaller is better," followed by an FS-2500 customer testifying that the "FS2500 was brought to [his] attention by Detroit Diesel." Gulf Coast claims this advertisement was false and/or misleading because it implied that engine manufacturers endorsed the FS-2500. Again, GCF disputes that Filtration Solutions' XM radio ads on these points are merely "misleading," and again suggests that they are literally false as well. The Court finds that questions of material fact remain as to whether these statements are misleading or literally false.

**Advertisements in Landline Magazine**

Filtration Solutions ran print advertisements in Landline Magazine that included the following statements about the FS-2500:

a. "Captures particles down 2.78 microns."

b. "The world's most compact and efficient bypass oil filter."

Filtration Solutions states that Gulf Coast alleges the 2.78-micron claim is misleading. Again, questions of material fact remain as to whether this claim is misleading or literally false. Gulf Coast alleges the "world's most compact and efficient bypass oil filter" is false and/or misleading.

**Filtration Solutions' Website**

On September 27, 2002, the following statement appeared on Filtration Solutions' website: "The preliminary results on the soot test now being conducted show 100 percent removal of soot down to 0.7 microns." Filtration Solutions states that Gulf Coast claims this statement is misleading. However, the Court finds that questions of material fact remain as to whether this claim is misleading or literally false.

Filtration Solutions' website used to have a Frequently Asked Questions ("FAQ") page that contained the following language: "The FS2500 is designed to take about 10 percent of the full flow of your oil in your engine join through a very fine filter mediate that cleans down to 1 micron." Filtration Solutions states that Gulf Coast alleges that statement was misleading with regard to the 1- micron claim. Again, the Court finds that questions of material fact remain as to whether this claim is misleading or literally false. Filtration Solutions' FAQ page also contained the following: "any small amounts of alkaline reserve that may be used is replenished at the time that the element is changed when you top off the crankcase (by a quart and a half)." Gulf Coast claims that statement was misleading because it implied that a quart and a half would adequately replenish the additives.

**Filtration Solutions' Invoices**

Gulf Coast claims the fact that some Filtration Solutions invoices include the words ".9 micron" is misleading. However, as noted by GCF, questions of material fact remain as to whether this statement is literally false or misleading.

**Gulf Coast Did Not Perform a Consumer Survey**

Gulf Coast has no consumer survey showing that Filtration Solutions' advertising deceived or had a tendency to deceive consumers or affected consumers' purchasing decisions. GCF asserts that, while neither side has offered consumer surveys in this case, GCF would show that a material issue of fact exists as to whether Randy Fields' and Filtration Solutions' advertising deceived or had a tendency to deceive consumers or affected consumers' purchasing decisions since the evidence in this case shows that after Counter-Defendants began running their false and/or misleading advertising messages in the fall of 2005 and in 2006, Gulf Coast's sales stopped increasing and began to actually decrease, citing to Ex. A, affidavit of Jerry Sims and Ex. F, Affidavit of Holly Sharp. This Court agrees with counter-defendants, however, that Sims' affidavit consists of only opinions and legal conclusions, rather than facts supporting his contentions. Further, the affidavit of Holly Sharp does not establish that the advertisements had a tendency to deceive customers. Thus, the Court will deem admitted the fact that GCF has no consumer surveys to rely upon in this matter.

Gulf Coast has no evidence that it lost any existing customers because of Filtration Solutions' advertisements. Gulf Coast has no evidence that it lost any potential customers because of Filtration Solutions' advertisements.[8]

Gulf Coast has no consumer survey on what is material to by-pass oil filter consumers. GCF notes that while neither side has offered consumer surveys in this case, it believes that material issues of fact exist as to what factors are material to by-pass filter customers, and this Court agrees.

When asked what is important to potential by-pass filtration customers, Gulf Coast's corporate representative singled out safety, friendliness of customer service, oil analysis,

---

[8]Again, GCF attempts to dispute this statement by citing to the affidavits of Jerry Sims and Holly Sharp. However, these affidavits do not establish that GCF lost any existing customers or potential customers because of the advertisements. Plaintiff's fact will be deemed admitted.

capacity, and lowering oil temperature. While GCF does not dispute this statement, it asserts that this is not an exclusive list of what is material to customers.

**Copyright Claim**

Gulf Coast claims that Gulf Coast published a document entitled "Preventative Maintenance Through Superior Filtration" in 1989. Gulf Coast alleges that Fields and/or Filtration Solutions infringed on its copyright to "Preventative Maintenance Through Superior Filtration." Specifically, Gulf Coast alleges that Fields and/or Filtration Solutions copied substantial elements of that document and posted them on the Filtration Solutions website as a FAQ page. GCF further asserts that Randy Fields also copied the work in paper form and distributed it as a sales flyer to promote the FS-2500 by-pass filter as early as 1998. Upon being contacted by Gulf Coast regarding the FAQ page in 2004, Fields removed said page from his website. Filtration Solutions asserts that by this point, Fields and/or Filtration Solutions had already made the decision to remove the FAQ page from the website because it was "irrelevant" and had not been used for sales in a long time; however, GCF asserts that genuine issues of material fact exist as to whether Randy Fields was using GCF's work to promote sales of his FS-2500 by-pass filter in 2004 or whether he considered the work irrelevant.

In 2007, Filtration Solutions asserts that the FAQ was mistakenly loaded onto Filtration Solutions' website when the site was being updated; however, GCF asserts that a genuine issue of material fact exists as to whether the decision to re-load GCF's work back onto the Filtration Solutions website in 2007 was a "mistake," noting that the work remained on Filtration Solutions' website for more than 11 months, and Randy Fields claims he approved all content loaded on the Filtration Solutions website. Gulf Coast has "no idea" how many (if any) customers have bought from Gulf Coast because of "Preventative Maintenance Through Superior Filtration." Gulf Coast has never estimated the value of "Preventative Maintenance Through Superior Filtration."

**Gulf Coast's Alleged Damages**

Gulf Coast claims damages of over $1.2 million for Filtration Solutions' alleged false advertising and copyright infringement. Gulf Coast's designated damages expert, Holly Sharp, estimated Gulf Coast's lost profits for sales of the GCF Model 0-2 and for residual sales of supplies for the GCF Model 0-2 "resulting from alleged false advertisement and copyright infringement" by Filtration Solutions. Filtration Solutions asserts that Sharp also estimated Filtration Solutions' "increase in gross profits . . . that resulted from [its] alleged false advertisement and copyright infringement." However, GCF states that a genuine issue of material fact exists as to this point since Holly Sharp states that she did not have sufficient data to estimate Filtration Solutions' increase in profits resulting from the false advertising.

Sharp assumed that Gulf Coast's sales of the GCF Model 0-2 would have increased from 2004 to 2008 at the same rate that Filtration Solutions' sales grew during that same period. In fact, Sharp assumed causation, which she admitted in her Rebuttal Affidavit. (See Doc. No. 103 at p. 3 ("My report simply quantifies the damages to GCF and does not draw legal conclusions such as causation.").) GCF asserts that a genuine issue of material fact exists as to this point since Holly Sharp relied on sales data from GCF coupled with the timing of Filtration Solutions' false advertising campaign to form an opinion that Filtration Solutions' false advertising caused an incremental loss of sales for GCF. Of course, Holly Sharp recognizes that the ultimate determination on this point will be determined by the fact finder in this case. See Ex. F (Holly Sharp affidavit) and Ex. H (Holly Sharp Rebuttal). However, the Court notes that these facts pointed out by GCF do not mean that Ms. Sharp did not assume causation. The Court will consider Filtration Solutions' fact to be admitted.

Sharp does not differentiate between those damages caused by Filtration Solutions' alleged false advertising and its alleged copyright infringement. Gulf Coast's damages for both Filtration Solutions' alleged false advertising and Filtration Solutions' alleged copyright

infringement are based on Gulf Coast's claim that it lost potential customers, and Gulf Coast's lone "evidence" supporting that claim that is the Sharp Affidavit.[9]   For example, Gulf Coast's corporate representative testified as follows regarding Gulf Coast's alleged lost new business:

**Q: You claim to have lost some new business, then?**

A: Yes, we have.

**Q: How do you know that**?

A: We know that because the sales forecast and the sales that we do year for year. At the time that they were running these ads, our sales went down, and we had already proved that our sales were going up. And we hired an economist, we gave them the data, and we're showing that we were affected substantially from these ads.

**Q: You say you know specifically you were affected by these ads. How do you know that**?

A: Well, I know it because our sales went down?[10]

GCF also includes a statement of additional genuine issues of material fact in its response to the motion for summary judgment.  The "facts" stated in paragraphs 1 through 12 of GCF's statement of additional issues of material fact are objectionable for the reasons

---

[9]GCF argues that the sales data of both GCF and Filtration Solutions coupled with the timing of Filtration Solutions' false advertising campaign are strong circumstantial evidence that the false advertising and copyright infringement caused a loss of sales for Gulf Coast.  However, the Court finds that this "evidence" does not account for other possible causes of the loss in sales, nor are the two parties the only players in the market for by-pass oil filters (such that a direct correlation between the advertisements and the sales figures of each respective party could be found).

[10]GCF argues  that there is no genuine issue of material fact that its sales data shows that at the time that Filtration Solutions implemented its false advertising campaign, GCF's sales began to trend downward and Filtration Solutions' sales began to trend upward.  However, this does not mean that Filtration Solutions' advertisements were the <u>cause</u> of these trends.

stated in plaintiff's reply suggestions, and will not be considered in the Court's statement of facts. Further, counter-defendants provide an additional statement of uncontroverted facts in their reply suggestions. The Court will not consider these on summary judgment, as GCF has had no opportunity to controvert these additional "facts," and arguments raised for the first time in a reply brief will not be considered.

      B.    Analysis

          1.    Lanham Act/False Advertising Claims

To prevail on a false advertising claim under the Lanham Act, plaintiff must prove: (1) the defendant made a false statement of fact in commercial advertising or promotion about its own or another's goods, services or commercial activities; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, that is, likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement. See Interfood Holding, B.V. v. Rice, 607 F.Supp.2d 1059, 1062 (E.D. Mo. 2009), quoting American Italian Pasta Co. v. New World Pasta Co., 371 F.3d 387, 390 (8th Cir. 2004) and United Industries Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998). If a defendant is found to have violated the Lanham Act willfully and in bad faith, a plaintiff is not required to provide consumer surveys or reaction tests in order to prove entitlement to damages in a false comparative advertising action. See Porous Media Corp. v. Pall Corp., 110 F.3d 1329, 1337 (8th Cir. 1997). However, when there is no finding of a willful violation or an intent to deceive, evidence of consumer impact is essential (usually through consumer or market research), unless the commercial claim is literally false. United Industries Corp. v. Clorox Co., 140 F.3d 1175, 1183 (8th Cir. 1998).

Notably, false advertising claims fall into one of two categories: (1) statements that are literally false as a factual matter, and (2) statements that may be literally true or ambiguous but implicitly convey a false impression, are misleading in context, or likely to

deceive consumers. <u>Clorox</u>, 140 F.3d at 1880. If a plaintiff establishes that an advertising claim is literally false or that defendant has committed a willful violation, it does not need to present evidence of actual consumer confusion. <u>Id.</u> However, this presumption does not apply to merely misleading advertisements, and in those cases plaintiffs would need to establish all of the above elements.

Counter-defendants claim that counter-claimant has only alleged that the following advertising claims are false: (1) the GCF Model 0-2 holds four gallons of oil; (2) GCF does not sell the GCF Model 0-2 with a filter element included; (3) GCF model 0-2 weighs forty-nine pounds; (4) the GCF Model 0-2 costs between $850 and $1,000 during the pertinent time period; (5) the FS-2500 costs about $549.00; (6) engine manufacturers endorse the FS-2500; (7) the FS-2500 is the world's most compact and efficient by-pass oil filter; and (8) Filtration Solutions falsely uses IBR Test results on Filtration Solutions' 360.5 and 361 elements in selling the FS-2500 element. Counter-defendants claim that counter-claimant has alleged that the following advertising claims are <u>misleading</u>, not false: (1) Gulf Coast's technical service is incompetent; (2) GCF offers no hose kits or only a 35' foot hose with no components; (3) the GCF Model 0-2 is not one-pass efficient and thus does not lower engine wear; (4) the GCF Model 0-2 is not efficient; (5) the FS-2500 could filter down to 0.7, 0.9, 1 and 2.78 micron. In their suggestions in opposition, counter-claimants state that they never limited their claims in such a manner, and that it is a jury question as to whether the advertising claims are false or misleading. This Court agrees with GCF. Further, plaintiff/counter-defendant does not perform any analysis as to whether the advertising claims should be legally categorized as false or misleading; instead, Filtration Solutions relies on the deposition of counter-claimant's corporate representative who stated that certain advertising claims were misleading. Therefore, the Court finds that issues remain for trial as to which of the advertising claims are literally false or only misleading.

Filtration Solutions further states that GCF has no evidence (1) linking Filtration Solutions' allegedly false and/or misleading advertising to Gulf Coast's claimed damages

to establish causation, (2) that the allegedly false and/or misleading messages in Filtration Solutions' advertising were material, i.e., that they were likely to influence purchasing decisions, and/or (3) that Filtration Solutions' alleged misleading advertising statements actually deceived or had the tendency to deceive a substantial segment of consumers.

a.    Evidence of causation of damages

Filtration Solutions notes that in contrast to injunctive relief, monetary relief requires a heightened level of proof of injury.  Porous Media Corp. v. Pall Corp., 110 F.3d 1329, 1336 (8th Cir. 1997).  In cases involving monetary relief, plaintiffs are required to prove that their damages were causally related to defendants' misconduct.  See Rhone-Poulenc Rorer Pharm., Inc. v. Marion Merrell Dow, Inc., 93 F.3d 511, 515 (8th Cir. 1996).  This can be proven through either direct or circumstantial evidence.  See EFCO Corp. v. Symons Corp., 219 F.3d 734, 740 (8th Cir. 2000).  Filtration Solutions states that in EFCO Corp., EFCO presented evidence showing (1) that during the period of misconduct, EFCO's revenues eroded and Symons' revenues increased at a nearly identical rate, and (2) that EFCO's sales force was losing clients to Symons, and that taken together, this evidence supported an inference that the shift in the companies' market shares was due to Symons' misconduct.  Id.  Here, Filtration Solutions argues, and the Court agrees, that the evidence does not show that Filtration Solutions' sales increased and GCF's sales dropped at a nearly identical rate.  See generally Holly Sharp's affidavit and the materials attached thereto.  Further, GCF's corporate representative has admitted that it has no evidence that it lost existing customers or potential customers to Filtration Solutions.  Filtration Solutions states that if the evidence in EFCO supported an inference of causation, when taken together, the fact that GCF can show neither of these things demonstrates that GCF cannot prove causation as a matter of law.  Filtration Solutions also distinguishes the EFCO case by noting that EFCO involved a niche market dominated by two players, whereas there is

no evidence here that GCF and FS dominate the by-pass filter business.[11]    Here, it appears that GCF's damages expert assumed causation, and their only other testimony is that GCF <u>believed</u> its sales dropped because of counter-defendant's conduct.  <u>See</u> <u>Blue Dane Simmental Corp. v. Amer. Simmental Ass'n</u>, 178 F.3d 1035, 1043 (8th Cir. 1999)(finding that a plaintiff's belief that defendant's advertising message caused the drop in sales insufficient to establish causation).

In response to the motion for summary judgment, GCF relies on (1) the affidavit of Holly Sharp (which, as stated by Filtration Solutions, assumes causation), and (2) the affidavit of GCF's corporate representative, Jerry Sims, which asserts his <u>belief</u> that his company's sales dropped because of Filtration Solutions' conduct (i.e., he cites to things such as Filtration Solutions and GCF advertising in the same media, targeting the same niche market, and Filtration Solutions framing its advertising as a comparison between the two rival products).    In the Court's opinion, there has been no evidence, direct or circumstantial, that the cause of GCF's sales decreases was Filtration Solutions' advertising, or that Filtration Solutions' sales increases are directly related/proportional to GCF's losses.  Therefore, summary judgment in Filtration Solutions' favor is proper as to this point.  Nonetheless, even though GCF is not entitled to monetary damages, the Court notes that GCF still may be entitled to injunctive relief.

b.    Materiality

Filtration Solutions states that GCF has no evidence to satisfy the materiality element, "whether a false or misleading statement is likely to make a difference to purchasers." <u>3M Innovative Properties Co. v. DuPont Dow Elastomers LLC</u>, 361 F.Supp.2d

---

[11]Filtration Solutions further notes other causation cases where consumer reaction surveys established the causal link, or where large customers testified they would not have given the defendant their business had they known the truth about the defendant's product. <u>See</u> Cases cited at Doc. No. 142, pp. 20-21.  Apparently GCF has no evidence that would satisfy these requirements, either.

958, 971 (D. Minn. 2005). Even where literal falsity is shown, materiality is not presumed. Id. Filtration Solutions says that when questioned at deposition, GCF's corporate representative stated that he thought the concerns that were important to by-pass filtration consumers were safety, friendly customer service, oil analysis, capacity and engine temperature. Filtration Solutions states that none of these factors are addressed in Filtration Solutions' advertising messages at issue in this matter, and thus all of GCF's claims should fail as a matter of law.

GCF responds, and the Court agrees, that the testimony of the corporate representative does not establish an <u>exclusive</u> list of what matters to consumers. Further, it appears that GCF has over-the-road truck driver customers on its witness list (<u>see</u> Doc. No. 154), and the Court anticipates that these witnesses would be able to testify as to what matters to them as customers. Therefore, questions of material fact remain as to the element of materiality, and Filtration Solutions' motion will be **DENIED** as to this issue.

c.      Deception or the Tendency to Deceive

Deception or tendency to deceive must be proven in a case involving misleading claims (but not claims involving literally false claims or willful violation claims). <u>See</u> <u>Clorox</u>, 140 F.3d at 1182. This element is usually established by a consumer survey. Id. at 1182-83. GCF did not do a consumer survey in this case; its only evidence as to this point is testimony from "expert" Kenny Jones, as well as affidavits of four truckers (Exs. N-Q to Doc. No. 164, which all state uniformly that Jerry Sims, GCF's corporate representative, informed them as to why Filtration's ads were deceptive). GCF indicates in its response that the testimony of Jones as well as the affidavits of the customers creates questions of material fact. However, the case law indicates that a consumer survey or some other sort of reliable expert evidence to explain consumer behavior is needed. Jones' report does not establish that the advertisements were deceptive or had the tendency to deceive, and has been stricken as to these issues (<u>see</u> above). Further, the consumers' affidavits appear to be hearsay as to what Jerry Sims told them about the advertisements, and are not

34

competent evidence to support this element.

However, this does not mean that GCF's claims fail in their entirety, as deception is presumed when the case involves literally false advertisements, or in a comparative advertising case where the evidence shows that the defendant acted willfully (i.e., with the intent to knowingly make false statements, acting deliberately to deceive consumers).  See Ott v. Target Corp., 153 F.Supp.2d 1055, 1072 (D. Minn. 2001).  In their reply suggestions, Filtration Solutions argues that at least some of GCF's claims are not comparative advertising; at this stage, though, the parties have not separated out very in a clear manner what is and is not comparative advertising, and the Court is not prepared to make specific findings as to this issue.  Filtration Solutions also argues that GCF has no evidence of willfulness; however, this argument is made for the first time in reply suggestions to the motion for summary judgment, and the Court will not consider such an argument.  Thus, there are questions of material fact, and GCF should be allowed to put on a case for injunctive relief as to whether counter-defendants made literally false advertisements and/or misleading comparative advertisements where defendant acted willfully.

### 2.    Copyright Claims

Filtration Solutions argues that GCF cannot pursue actual damages or disgorge profits for its copyright claim because GCF has no evidence that it lost profits or sales as a result of Filtration Solutions' FAQ page, and has no evidence that Filtration Solutions profited from its use of the FAQ page.  In response, GCF argues that Filtration Solutions' motion is irrelevant, as GCF is seeking statutory damages under the copyright act, not actual damages.  See 17 U.S.C. §§ 412, 504.  Therefore, GCF's claims for actual damages or disgorgement of profits shall be **DISMISSED**, but questions of material fact remain for trial as to GCF's statutory damages claims under the copyright act.

### 3.    Tortious Interference with Business Expectancy

Under Missouri law, a party claiming tortious interference with a business expectancy has the burden to prove (1) a contract or valid business expectancy; (2)

defendant's knowledge of said contract or expectancy; (3) breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages. Tamko Roofing Products, Inc. v. Smith Engineering Co., 450 F.3d 822, 829 (8th Cir. 2006). Filtration Solutions states that GCF has no evidence that counter-defendants caused GCF's alleged damages, as GCF cannot demonstrate that Filtration Solutions' alleged false advertising or copyright infringement caused GCF to lose any new business. Filtration notes that under Missouri law, the plaintiff must prove that the other party actively took steps to induce the breach and that expectancy would have come to fruition but for the actor's improper conduct. Bell v. May Dept. Stores Co., 6 S.W.3d 871, 878 (Mo. 1999). Here, Filtration notes that GCF has no evidence that but for the alleged false advertising/copyright infringement, GCF would have earned an additional $1.2 million in new business, and GCF has no evidence it lost customers or new business to Filtration Solutions; instead, GCF's only evidence is that its sales went down for a few years and Filtration Solutions' sales went up.

GCF again argues in opposition that there is circumstantial evidence as to this element, in that GCF's sales growth slowed and then decreased during the relevant time period, while Filtration Solutions' sales figures increased–GCF argues that this was at the expense of GCF, and that the circumstantial evidence supports the reasonable inference that GCF lost profits as a result of the false advertisements. After considering the arguments presented by the parties, the Court finds GCF's "evidence" as to this issue to be insufficient to survive summary judgment; there are many reasons why profits and/or sales can rise or fall which are not accounted-for in any of the evidence before the Court. Further, there does not seem to be a direct relationship between GCF's sales figures and Filtration Solutions' sales figures, and given that they are not the only competitors in the by-pass oil filter market, the Court cannot find that GCF has presented evidence that supports a reasonable inference that GCF lost profits as a result of the allegedly false advertisements. Therefore, as GCF is unable to demonstrate causation, Filtration

Solutions' motion for summary judgment will be **GRANTED** as to this issue, and GCF's claims in Count III of its counter-claim will be **DISMISSED.**

## VI. Executive Summaries of Remaining Claims

As discussed throughout the Order, above, the Court has noted many instances where questions of material fact appear to remain for trial; however, in several of these instances, it appears that questions remain because the issues were not briefed by the parties in their opening briefs (and, perhaps, were not briefed by the parties at all). Therefore, the Court has concluded that the parties should each prepare an Executive Summary of their remaining claims so that the Court may more efficiently consider those claims.  This procedure should narrow the issues to be decided during the trial.

As to each remaining claim stated in their respective complaints, plaintiff and counterclaimant **SHALL** provide the following information to the Court: (1) the elements needed to be proven for a submissible case; (2) concise and non-argumentative references to evidence that supports the necessary elements; and (3) citations to legal authority supporting this claim, specifically referencing their respective summary judgment motion/response/reply briefing as needed.  As discussed above, the remaining claims are (1) for plaintiff, its claim for injunctive relief under the Lanham Act; and (2) for counter-claimant, its claims for injunctive relief under the Lanham Act and for statutory damages under the copyright act.  The parties shall not re-argue issues upon which partial summary judgment has already been granted pursuant to this Order.  Instead, the parties should focus their briefing on issues where this Court has found that questions of material fact remain, as well as issues that were not briefed on summary judgment.  In particular, the Court would like both sides to cite to legal authority and analyze the evidence in light of that authority as to whether the advertising claims at issue should be categorized as false, misleading or both.  Each parties' Executive Summary shall be no longer than twenty pages, in 12-point font, and double spaced.  The parties shall submit their Executive

Summaries on or before **Tuesday, February 2, 2010.**

Following submission of the executive summaries, each party **SHALL** submit Opposition to the Executive Summaries. Each Opposition **SHALL** provide the following information to the court: (1) a brief examination of which facts in the Executive Summary are disputed; (2) citations from the pleadings/discovery as to why the causes of action are erroneous or not supported by facts and/or evidence; and (3) legal authority for their opposition, which may reference their summary judgment motion/response/reply briefing as needed. Again, each parties' Opposition shall be no longer than twenty pages, in 12-point font, and double spaced. The parties shall submit their Oppositions on or before **Tuesday, February 16, 2010.**

## VII.    Conclusion

For the foregoing reasons:

(1)    Plaintiff's Challenge to Defendant's Designated Expert Kenny Jones (Doc. No. 115) and Plaintiff's <u>Daubert</u> Motion to Exclude Opinions of Defendant's Designated Expert Kenny Jones (Doc. No. 119) will be **DENIED IN PART** as they relate to paragraph 13 and all paragraphs not specifically mentioned in plaintiff's opening brief, and **GRANTED IN PART** in all other respects;

(2)    Plaintiff's Challenge to Defendant's Designated Expert Marina Radoumis (Doc. No. 116) and Plaintiff's <u>Daubert</u> Motion to Exclude Opinions of Defendant's Designated Expert Marina Radoumis (Doc. No. 118) will be **GRANTED IN PART** as to paragraphs 9, 10(a)-(d), 11, and 12, and **PROVISIONALLY DENIED IN PART** as to paragraphs 14 and 15; however, defendant is to file the advertising messages relevant to Ms. Radoumis' opinions in paragraphs 14 and 15 on ECF on or before **January 25, 2010**;

(3)    Defendant's Motion for Summary Judgment (Doc. No. 126) is **GRANTED IN PART** as it relates to plaintiff's claims for monetary damages under the Lanham Act and plaintiff's claims for tortious interference with business expectancy, and **DENIED IN PART** as it relates to plaintiff's claims for injunctive relief under the Lanham Act;

(4)    Counter-Defendants' Motion for Summary Judgment (Doc. No. 141) is **GRANTED IN PART** as it relates to counter-claimant's claims for monetary damages under the Lanham Act, for actual damages or disgorgement of profits as to GCF's copyright

claims, and counter-claimant's claims for tortious interference with business expectancy, and is **DENIED IN PART** as it relates to counter-claimant's claims for injunctive relief under the Lanham Act and for statutory damages under the copyright act;

(5)     Counter-Defendants' Motion to Strike Portions of the Affidavit of Jerry Sims and Suggestions in Support (Doc. No. 169) is **DENIED AS MOOT**;

(6)     The parties shall submit executive summaries of their remaining claims as detailed in Section VI of this Order; and

(7)     As discussed in the teleconference held with the Court on January 12, 2010, the trial setting of this matter is continued to **April 5, 2010, at 8:30 a.m.**

       **IT IS SO ORDERED.**

                                      /s/Fernando J. Gaitan, Jr.
                                      Fernando J. Gaitan, Jr.
                                      Chief United States District Judge

Dated:   01/12/10
Kansas City, Missouri